Anna MAYER, Marie DiBiasi, Murray Rosenberg, Shirley Sambroff, and Kate Yablon, individually and on behalf of all others similarly situated, Plaintiffs,

and

Consuelo Castro, by her daughter and next friend, Albertina Reynosa, Sabine Parzen, and Mary Ann Perez, individually and on behalf of all others similarly situated, Proposed–Plaintiff–Intervenors,

v.

Brian WING, Acting Commissioner of The New York State Department of Social Services and Marva Hammons, Administrator of The New York City Human Resources Administration, Defendants.

No. 96 Civ. 0788 (SAS).

United States District Court, S.D. New York.

April 3, 1996.

Donna Dougherty, Queens Legal Services For The Elderly, Rego Park, New York, Tob Golick, Leslie Salzman, Cardozo Bet Tzedek Legal Services, New York City, Michael Scherz, New York Legal Assistance Group, New York City, for Plaintiffs.

James M. Hershler, Assistant Attorney General, Office of The Attorney General, The State of New York, New York City, for State Defendant, Wing.

Samuel Moriber, Bruce Rosenbaum, Assistant Corporation Counsel, Office of The Corporation Counsels, The City of New York, New York City, for City Defendant, Hammons.

*Opinion and Order*

SCHEINDLIN, District Judge.

This is a class action challenging the manner in which New York City and State agencies have reduced home care services for Medicaid recipients. The individually named Plaintiffs are five recipients of home care services, each of whom received notice that the level of services he or she received was being reduced. The defendants are the Acting Commissioner of the New York State Department of Social Services ("State Defendant") and the Administrator of the New York City Human Resources Administration ("City Defendant"). Presently before the Court is Plaintiffs' motion for a preliminary injunction preventing the City Defendant from reducing or terminating home care services without a change in the recipient's condition or circumstances, and requiring Defendants to automatically schedule a fair hearing—with aid-continuing—for any recipient whose level of care is reduced. Also

before the Court is Plaintiffs' motion for class certification. For the reasons set forth below, Plaintiffs' motion for a preliminary injunction is granted in part and denied in part, and Plaintiffs' motion for class certification is granted.[1]

## I. *Factual Background*

Medicaid, established under Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq.*, provides medical assistance to individuals whose income and resources are insufficient to meet the costs of medical care, and who are either age 65 or over, blind, disabled, or members of families with dependent children. In New York, the State Defendant is the state agency responsible for the implementation of the State's Medicaid plan. N.Y.Soc.Serv.L. § 363–a(1). The City Defendant administers the Medicaid program in New York City under the supervision of the State Defendant.

"Medical assistance" is defined to include "personal care services furnished … in a home or other location." 42 U.S.C. § 1396 d(a)(24); N.Y.Soc.Serv.L. § 365–a(2)(e). "Personal care services" provided under the New York Medicaid program include assistance with personal hygiene, dressing, feeding and housekeeping. Such assistance must be "essential to the maintenance of the patient's health and safety in his or her own home." N.Y.Soc.Serv.L. § 365–a(2)(e); 18 N.Y.C.R.R. § 505.14(a)(1).

In New York City, individuals requiring personal care services must apply to the City Defendant's Home Care Services Program. Eligibility is determined under procedures and standards set forth in State regulations and each applicant must undergo a rigorous assessment process. *See* 18 N.Y.C.R.R. § 505.14(b). The applicant's treating physician must submit a "physician's order" describing the applicant's medical condition and needs; a "social assessment" must be completed by one of the City Defendant's caseworkers; and a "nursing assessment" must be completed by a nurse. A number of factors are considered in these assessments, including the type and severity of medical and functional impairment, the availability of informal caregivers, and the applicant's living and housing situation. *See id.* On the basis of the various assessments, a medical review team determines the number of hours of care that an applicant will need. *See* Tr. 30.[2]

Every recipient of home care services must be reauthorized at least once a year. *See* 18 N.Y.C.C.R. § 505.14(b)(5)(iii). When the recipient is due for reauthorization, the same procedures used for initial assessments are mandated, including a new physician's order, and nursing and social assessments. *See* 18 N.Y.C.R.R. § 505.14(b)(5)(ix). Where, upon reauthorization, the City Defendant reduces a recipient's level of care, the recipient has the right to request a fair hearing within 60 days of the notice date. The recipient is entitled to receive "aid-continuing" pending the hearing if her request is made before the *effective* date of the notice, or, under certain circumstances, within 10 days of the agency's mailing of the notice. *See* 18 N.Y.C.R.R. Subpart 358–3.

All of the named Plaintiffs and the intervenors are recipients of home care services who received notices informing them that their level of services was being reduced. All of these individuals requested administrative hearings which, in most cases, resulted in the proposed reductions being withdrawn or held in abeyance pending the outcome of the hearings. At least three of them actually suffered a temporary reduction in home care services. One suffered this reduction despite requesting a fair hearing prior to the effective date. *See* Affidavit of Plaintiff Shirley Sambroff ("Sambroff Aff."), dated March 15, 1996, ¶ 5. Another experienced a reduction

**1.** Plaintiffs also seek leave to permit three additional Medicaid home care recipients to intervene in this action. Because the proposed intervenors have the same legal claims as the named plaintiffs, this motion is granted. *See* Fed. R.Civ.P. 24(b)(2) (authorizing intervention "when an applicant's claim or defense and the main action have a question of law or fact in common"); *Security Pacific Mortg. and Real Estate*

*Services, Inc. v. Republic of Philippines*, 962 F.2d 204, 208 (2d Cir.1992) (decision to permit intervention falls within court's sound discretion).

**2.** Citations in this form are to the Transcript of the Preliminary Injunction Hearing held on March 19, 1996.

because she did not receive notice that her services were being cut until after the effective date. *See* Declaration of Michael Scherz, Attorney for Plaintiffs ("Scherz Dec."), dated February 23, 1996, ¶ 6.

Plaintiffs assert that the City Defendant is arbitrarily reducing home care services for Medicaid recipients rather than following the reauthorization procedures required by law. Plaintiffs argue that personal care services may only be reduced or terminated if it is found that the recipient's circumstances have changed sufficiently to warrant such an action, or if "the social services district reasonably expects that such services cannot maintain or continue to maintain the patient's health and safety in his or her home." N.Y.Soc.Serv.L. § 366–a(5); 18 N.Y.C.R.R. § 505.14(b)(5)(v)(a).[3] Plaintiffs contend that the City Defendant decided to reduce their aid despite the absence of either of these requirements. They seek injunctive relief enjoining Defendants from arbitrarily reducing home care services in the future.

## II. *Standing*

As an initial matter, Defendants maintain that Plaintiffs lack standing to bring this action. To have standing, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 3324–25, 82 L.Ed.2d 556 (1984). The relevant date for measuring whether a plaintiff has standing is the date on which the suit commenced. *United States Parole Commission v. Geraghty,* 445 U.S. 388, 397, 100 S.Ct. 1202, 1209, 63 L.Ed.2d 479 (1980). Defendants contend that because

none of the Plaintiffs was actually experiencing a reduction in services at the time this suit was filed, Plaintiffs had no injury that could be redressed by the court.[4]

Defendants' argument is predicated on an unreasonably narrow construction of the injury Plaintiffs claim to have suffered. Plaintiffs allege that Defendants have been arbitrarily sending out notices of reduction to recipients of home care services, deliberately placing the onus on a very frail and frightened class of persons to fight to retain services previously determined to be medically necessary to their welfare. They allege that the methods Defendants have employed for the reauthorization of home care services violate federal and state Medicaid laws as well as their Fourteenth Amendment right to due process.

The fact that none of the Plaintiffs was experiencing a reduction of services on the date the complaint was filed is of no moment. Plaintiffs allege that when this suit was commenced, three of them were still awaiting hearings to determine whether their aid would be cut. *See* Complaint ¶¶ 20, 46, 52. These Plaintiffs, who had been informed that their services were being reduced and still faced the imminent prospect of such a fate, have standing to bring this action. *See Cottrell v. Lopeman,* 119 F.R.D. 651, 653 (S.D.Ohio 1987) (possibility that plaintiff would be denied unemployment benefits at a scheduled hearing is sufficient to meet injury in fact requirement). As the court stated in *Cottrell,*

> At the time plaintiff initiated this action he was facing a hearing and hearing procedures which he claimed violated his con-

---

3. Plaintiffs also concede that personal care services may be reduced if it is found that the patient can be served more appropriately and cost effectively through other Medicaid services, such as the personal emergency response services (PERS) or the shared aide program ("cluster care"). N.Y.Soc.Serv.L. §§ 367–g, 367–k(2)(a)(iii), 18 N.Y.C.C.R. § 505.14(b). However, they maintain that such provisions are irrelevant to this action.

4. While conceding that none of the named Plaintiffs was suffering a reduction in services at the time of filing, Plaintiffs argue that intervenor Consuelo Castro was experiencing such a reduc-

tion when she brought her motion to intervene. "[A]n intervenor may continue a suit for which the Court lacks jurisdiction over the original parties where the intervenor provides an independent jurisdictional basis for the relief sought." *Schroedel v. New York University Medical Center,* 885 F.Supp. 594, 600 (S.D.N.Y.1995). However, at the preliminary hearing, Defendants proved that Ms. Castro's services were effectively reinstated at 8:00 a.m. on February 23, 1996, hours before her motion to intervene was filed. Tr. 191. Ms. Castro is therefore in the same position with regard to standing as the other Plaintiffs and intervenors.

stitutional rights. This is sufficient to constitute an injury in fact and to provide plaintiff with the requisite standing to initiate this action.

*Id.* Because this is a class action, the fact that at least some of the named Plaintiffs have standing is sufficient to confer jurisdiction over Plaintiffs' claims. *See Comer v. Cisneros,* 37 F.3d 775, 788 (2d Cir.1994) ("only one named plaintiff must have standing with respect to each claim").

▮ Moreover, even if Defendants were right that only an actual reduction in services can constitute an injury, Plaintiffs would still have standing. Typically, a plaintiff must be suffering a redressable injury when she commences suit; however, the injury requirement is also met "where the plaintiff has suffered [a past] injury and there is a substantial likelihood that he or she will again be subjected to the allegedly unlawful policy in the future." *Robidoux v. Celani,* 987 F.2d 931, 938 (2d Cir.1993) (citing *City of Los Angeles v. Lyons,* 461 U.S. 95, 111, 103 S.Ct. 1660, 1670, 75 L.Ed.2d 675 (1983)). This is the case here. Three of the named Plaintiffs and intervenors have previously suffered a reduction in services. *See* Sambroff Aff. ¶ 5; Scherz Dec. ¶ 6; Affidavit of Albertina Reynosa ("Reynosa Aff."), Daughter of Intervenor Consuelo Castro, dated February 22, 1996, ¶ 2. Because each recipient of home services must be reauthorized at least once a year, there is a "substantial likelihood" that these individuals will have their aid cut in the future.

▮ Defendants assert that the possibility that Plaintiffs will suffer future harm is purely speculative and thus insufficient to confer standing. *See Lyons,* 461 U.S. at 101–02, 103 S.Ct. at 1664–65. "The difference between a threatened injury and a conjectural one is a matter of degree, and since no precise test

exists, each case must be considered on an individual basis." *Alliance of American Insurers v. Cuomo,* 854 F.2d 591, 596 (2d Cir. 1988).

The threat of future injury here *is* quite real. Reauthorizations of home care services frequently result in notices of reduction being sent to recipients. Plaintiff Shirley Sambroff has received three such notices since February 1995. *See* Sambroff Aff. ¶ 10. Intervenor Mary Ann Perez successfully challenged the City Defendant's decision to reduce her aid at a hearing in April 1995, only to receive another notice of reduction six weeks later. *See* Affidavit of Mary Ann Perez ("Perez Aff."), dated February 23, 1996, ¶¶ 8–9. Because notices of reduction are so common, and because the provisions enabling recipients to receive aid-continuing while awaiting a hearing often do not work,[5] the likelihood of future injury is great. Standing is therefore established. *See Darryl H. v. Coler,* 801 F.2d 893, 897 n. 3 (7th Cir.1986) (children had standing to challenge agency policy requiring them to disrobe during physical exams for child abuse because, "in any subsequent child abuse investigation they will again be subjected to the allegedly unconstitutional procedures"); *Goff v. Nix,* 803 F.2d 358, 361 n. 6 (8th Cir.1986), *cert. denied,* 484 U.S. 835, 108 S.Ct. 115, 98 L.Ed.2d 73 (1987) (prisoners had standing to challenge body cavity searches because of likelihood that they would be subjected to these searches again).

### III.  *Class Certification*

▮ Plaintiffs seek certification of a class consisting of all New York City Medicaid recipients whose personal care services were or will be reduced and who:

a) were previously determined by defendants to be medically in need of home care services; b) have had no significant change

---

5. Defendants' inability to provide aid-continuing in a timely fashion was recognized by this court in *Morel v. Giuliani,* 1995 WL 5902 (S.D.N.Y. Jan. 4, 1995). In that case, the State Defendant acknowledged that it could not "guarantee timely provision of aid continuing to anyone requesting a hearing by mail," and the City Defendant conceded that it failed to provide aid-continuing on time in at least 10% of all cases. *Id.* at *10–11. Moreover, the court noted that the City had "pro-

vide[d] no records or monitoring methods to assure the Court that this failure rate is not significantly higher." *Id.* at *11. Although *Morel* involved Defendants' failure to provide aid-continuing in AFDC, home relief and food stamp programs, the State Defendant's Bureau of Fair Hearings handles all request for fair hearings, including those under Medicaid. The problems addressed in *Morel* are thus equally applicable here.

in their medical condition or their social circumstances; and c) have had their home care services reduced without having these services replaced with other Medicaid services, such as a personal emergency response system ("PERS") or shared aide services ("cluster care").

Pl.Mem. in Supp. of Class Certification at 2–3. Class certification is governed by Federal Rule of Civil Procedure 23. Plaintiffs must first satisfy Rule 23(a)'s four requirements: (1) a class so numerous that joinder is impracticable; (2) questions of law or fact that are common to the class; (3) named parties with claims typical of the class; and (4) class representatives who will fairly and adequately protect the interests of the class. Next, Plaintiffs must establish that the case falls within one of Rule 23(b)'s categories for which a class action is appropriate.[6]

### A. *Rule 23(a)*

Plaintiffs' proposed class meets the requirements of Rule 23(a). According to the City Defendant's own statistics, there are approximately 43,000 potential class members currently receiving Medicaid home care services,[7] a number which easily satisfies the numerosity requirement of Rule 23(a). *See Sharon Steel Corp. v. Chase Manhattan Bank, N.A.*, 88 F.R.D. 38, 44 (S.D.N.Y.1980) (certifying a class of 87 individuals). The action also turns on common questions of law concerning the circumstances in which Defendants may reduce home care services.

Plaintiffs satisfy the typicality requirement because "their claims arise from the same conduct as those of the proposed members of the class, their claims are premised on the same legal bases, and their interests are not adverse to the interests of other class members." *Morel v. Giuliani*, 1995 WL 5902, at *7 (S.D.N.Y. Jan. 4, 1995). Finally, the class representatives are capable of fairly and adequately protecting the interests of the proposed class. "The adequate-representation requirement is satisfied by a commonality of interests between representatives and class members and vigorous prosecution by plaintiff[s] and plaintiffs' counsel." *Akerman v. Oryx Communications, Inc.*, 609 F.Supp. 363, 378 (S.D.N.Y. 1984), *aff'd*, 810 F.2d 336 (2d Cir.1987). The named Plaintiffs and intervenors and their counsel meet this standard.

### B. *Rule 23(b)*

Plaintiffs are entitled to certification under either Rule 23(b)(2) or (3). Defendants' conduct is generally applicable to the class, thus making final injunctive and declaratory relief appropriate for the whole class. *See* Fed. R.Civ.P. 23(b)(2). Additionally, a class action is the best way to ensure a fair and efficient resolution of this controversy. *See* Fed. R.Civ.P. 23(b)(3). The individual members of the proposed class require the assistance of others to perform basic daily functions. Initiating a lawsuit would be nearly impossibly for most of these persons. In a similar case concerning elderly or infirm Medicaid recipients, the court held that class actions are "preferable as a means to guarantee to all Medicaid recipients easy enforcement of a favorable judgment." *Cutler v. Perales*, 128 F.R.D. 39, 47 (S.D.N.Y.1989).

Defendants contend that class certification is unnecessary because the *stare decisis* effect of a favorable decision for the named Plaintiffs will adequately protect all those similarly situated. "This claim overstates the protection afforded to plaintiffs by that doctrine, particularly to indigent plaintiffs. Moreover, it ignores the many cases allowing class actions to seek injunctive relief against government agencies." *Morel*, 1995 WL 5902, at *8.

---

**6.** Under Rule 23(b), a class action is appropriate where the requirements of subdivision (a) are met and either: (1) the prosecution of separate actions could result in inconsistent adjudications, establish inconsistent standards of conduct, or prejudice the interests of others; (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or (3) questions of law common to the members of the class predominate and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *See* Fed.R.Civ.P. 23(b).

**7.** *See* HRA Facts: January 1995, Ex. A to Affirmation of Leslie Salzman ("Salzman Aff."), Attorney for Plaintiffs, dated January 10, 1996.

**IV.**  *Injunctive Relief*

A party seeking a preliminary injunction has the burden of demonstrating (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting preliminary relief.

*Citibank, N.A. v. Citytrust,* 756 F.2d 273, 275 (2d Cir.1985) (quotations omitted). "Where, as here, a preliminary injunction 'seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme,' the less rigorous fair-ground-for-litigation standard should not be applied." *Sweeney v. Bane,* 996 F.2d 1384, 1388 (2d Cir.1993) (quoting *Plaza Health Labs., Inc. v. Perales,* 878 F.2d 577, 580 (2d Cir.1989)). Plaintiffs must therefore show irreparable harm and a likelihood of success on the merits.

**A.**  *Irreparable Harm*

Plaintiffs have demonstrated a sufficient threat that they will suffer irreparable harm if injunctive relief is not granted. Plaintiffs allege that, absent injunctive relief, the City Defendant will continue a policy of arbitrarily reducing or terminating home care services. Such a termination or reduction of Medicaid benefits would result in the deprivation of life-sustaining medical services. This certainly constitutes irreparable harm. *See Caldwell v. Blum,* 621 F.2d 491 (2d Cir.1980), *cert. denied,* 452 U.S. 909, 101 S.Ct. 3039, 69 L.Ed.2d 412 (1981) (irreparable harm existed where plaintiffs "would, absent relief, be exposed to the hardship of being denied essential medical benefits").

Plaintiffs have also demonstrated that the existing fair hearing system cannot adequately protect them from the threat that their services will be arbitrarily reduced. Under the present system, a home care services recipient who files a timely request for a fair hearing cannot be guaranteed aid-continuing. Defendants conceded as much in a separate litigation last year, *see Morel,* 1995 WL 5902, at *11, and the experience of one named Plaintiff in this action is proof of this fact. *See* Sambroff Aff. ¶ 5. Moreover, for those recipients who attempt to request a hearing by phone, simply getting through is quite difficult. Plaintiffs submitted a declaration from a paralegal who called the appropriate number every twenty minutes on five separate work days. Despite calling a total of one hundred and twenty two times, he was never able to get through to a fair hearing representative. *See* Declaration of Aleksandr Vakarev, dated March 14, 1996, ¶ 8.

Finally, the possibility that Plaintiffs will suffer a reduction in home care services unless injunctive relief is granted is hardly speculative. Three of the named Plaintiffs and intervenors in this suit have already, at one time or another, suffered such a reduction. The experience of the named Plaintiffs and intervenors suggests that notices of reduction are being sent out at an alarming rate. Indeed, although only a small percentage of those who receive notices of reduction actually request a fair hearing,[8] a total of 4,920 such requests were made in 1995. *See* Affirmation of Russell J. Hanks, Deputy General Counsel in charge of the State Defendant's Office of Administrative Hearings, dated February 22, 1996, ¶ 5. Defendants concede that this represents an increase over the previous year, and that "[t]he backlog of unscheduled hearings has increased significantly since the middle of 1995." Testimony of Russell J. Hanks, Tr. 139–40. Given this volume, it is virtually certain that, absent injunctive relief, some members of the proposed class will suffer irreparable harm.

**B.**  *Likelihood of Success on the Merits*

**1.**  *Social Services Law § 366–a(5)*

Plaintiffs contend that New York law prohibits Defendants from reducing home care services unless it is found that the recipient's circumstances have changed sufficiently to justify such a reduction. Plaintiffs

---

**8.**  Russell J. Hanks, Deputy General Counsel in charge of the State Defendant's Office of Administrative Hearings, estimates that only about ten to twenty percent of individuals who receive a notice of reduction request a fair hearing. Tr. 138.

rely on Social Services Law § 366–a(5), which provides in pertinent part:

> All continuing assistance under this title shall be reconsidered from time to time, or as frequently as may be required by the regulations of the department. After such further investigation as the social services official may deem necessary or the department may require, *the assistance may be modified or withdrawn if it is found that the recipient's circumstances have changed sufficiently to warrant such action.* The assistance may be cancelled for cause, and payment thereof may be suspended for cause for such periods as may be deemed necessary, subject to review by the department as provided in section twenty-two of this chapter.

N.Y.Soc.Serv.L. § 366–a(5) (emphasis added). Plaintiffs read this language to mean that a change in a recipient's circumstances is the *only* development that may warrant modification of home care services.

Defendants argue that Plaintiffs' interpretation would lead to two "absurd" results which should be avoided. First, they contend that it would prevent the City Defendant from rectifying any mistakes it makes in the initial authorization process. Second, they note that because § 365–a(5) provides that "assistance may be cancelled for cause," Plaintiffs' interpretation would make it more difficult for the City Defendant to modify services than to terminate them outright. Additionally, Defendants contend that § 366–a(5) does not apply to the reauthorization of home care services, but rather to the reconsideration of a recipient's eligibility for Medicaid.

On balance, Defendants' arguments concerning the meaning of § 366–a(5) are more convincing than those offered by Plaintiffs. The implications of Plaintiffs' interpretation are indeed troubling. More importantly, Defendants appear to be right that § 366–a(5) deals with Medicaid eligibility, and not the reauthorization of home care services. Significantly, the language of § 366–a(5) tracks that of other statutory provisions and regulations dealing with Medicaid eligibility.[9] *See* N.Y.Soc.Serv.L. § 366–a(3) (referring to "investigation" to determine Medicaid eligibility); 18 N.Y.C.R.R. § 351.1(a) ("[c]ontinuing eligibility for public assistance shall be established by investigation and documentation"); 18 N.Y.C.R.R. § 360–2.2(e) (eligibility must be redetermined "whenever there is a change in the recipient's circumstances that may affect eligibility"). It does not track the language of the regulations concerning home care services, which speak of the "assessment," "reassessment," "authorization" and "reauthorization" of "services." *See* 18 N.Y.C.R.R. § 505.14.

### 2. *Due Process*

■■■ Although Plaintiffs are not likely to succeed on their claim that Defendants have violated § 366–a(5), they are likely to succeed on their due process claim. The Fourteenth Amendment prohibits the state from depriving a person of life, liberty or property without due process of law. Plaintiffs' Medicaid benefits are a protectable "property interest" under the Fourteenth Amendment. *See Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (welfare recipients had property interest in continued payment of welfare benefits). Thus, Plaintiffs can prevail on this claim if they can demonstrate that they have been denied due process.

---

9. Defendants' interpretation is also perfectly consistent with the text of § 366–a(5). As noted, § 366–a(5) provides that "assistance may be modified or withdrawn" where there is a change in the "recipient's circumstances." This language likely refers to changes in a recipient's financial status that affect her eligibility for Medicaid. Naturally, a Medicaid recipient's assistance will be "withdrawn" if she suddenly becomes very wealthy. Such assistance may also be "modified" because of an improvement in a recipient's financial condition. When new income or resources cause a recipient to exceed the applicable income or resources eligibility standard, the recipient must "spend-down." This means that she must incur medical bills that exceed the amount of her excess income or resources before she will be fully eligible for assistance. *See* 42 C.F.R. § 435.831, N.Y.Soc.Serv.L. § 366(2)(b). Thus, assistance may be modified in that a recipient with no prior spend-down obligation may suddenly be required to spend-down to attain full eligibility, or a recipient's spend-down amount may be increased or decreased.

■ At a minimum, "due process requires that government officials refrain from acting in an irrational, arbitrary or capricious manner." *Pollnow v. Glennon,* 757 F.2d 496, 501 (2d Cir.1985). This is precisely the manner in which the City Defendant appears to have acted. The testimony of the named Plaintiffs and intervenors indicates that the City Defendant has, without any adequate justification, repeatedly determined to reduce services initially authorized to home care recipients. The capricious nature of these decisions is evidenced by the fact that Plaintiffs received notices of reduction while in the same or worse physical condition they were in when home care was initially authorized, and were given no explanation for why they were assessed differently the second time around.[10] *See Lefrak Forest Hills Corp. v. Galvin,* 40 A.D.2d 211, 338 N.Y.S.2d 932, 937 (2d Dep't 1972), *aff'd,* 32 N.Y.2d 796, 345 N.Y.S.2d 547, 298 N.E.2d 685 (1973), *cert. denied,* 414 U.S. 1004, 94 S.Ct. 360, 38 L.Ed.2d 240 (1973) ("Capricious action in a legal sense is established when an administrative agency on identical facts decides differently.").

■ Due process demands that decisions regarding entitlements to government benefits be made according to "ascertainable standards" that are applied in a rational and consistent manner. *See Holmes v. New York City Housing Authority,* 398 F.2d 262, 265 (2d Cir.1968) (housing authority may not arbitrarily decide, with neither standards nor a "fair and orderly procedure," which prospective tenants to admit from public housing waiting list). The evidence offered by Plaintiffs and intervenors in their papers and at the hearing establishes that no such standards are being employed by the City Defendant here. Perhaps the best evidence of the erratic nature of its decision-making is how infrequently its decisions to reduce care are upheld at fair hearings. Ninety-two percent of fair hearings requested involving personal care services result in the agency withdrawing its notice of reduction or being reversed. *See* Letter of Barry Berberich, Asst. Commissioner of State Defendant, dated May 16, 1995, Ex. I to Salzman Aff.

Part of the problem stems from the absence of standards in the regulations governing the reauthorization of personal care services. 18 N.Y.C.R.R. § 505.14 offers some guidance for how decisions regarding reauthorization are to be made. For example, it provides that before personal care services may be reauthorized, the agency must assess: (1) whether such services are medically necessary, and (2) whether the patient can be served appropriately and more cost-effectively through other programs. *See* 18 N.Y.C.R.R. § 504.14(b)(3)(v)(a)(1). Additionally, it refers specifically to certain situations in which aid may be reduced, such as where a recipient refuses to cooperate with the required reassessment, or where there is an unexpected change in the recipient's condition or social circumstances. *See* § 504.14(b)(3)(iv)(f)(1); § 504.14(b)(5)(x). However, generally the regulations leave a great deal of discretion with the governing agency regarding the modification or withdrawal of personal care services. For example, services may be reduced or discontinued because a "reassessment indicates that personal care services are inappropriate or that the personal care services hours authorized must be reduced or discontinued." § 504.14(b)(3)(iv)(f)(2).

The absence of standards governing the withdrawal or modification of services permits arbitrary decisionmaking. Although

---

10. The case of Plaintiff Anna Mayer is illustrative. Ms. Mayer suffers from Parkinson's Disease, polycythemia and high blood pressure, and is blind in one eye. Tr. 153. She is in such a weakened state that she cannot turn herself over in bed, but must be periodically turned by an attendant to prevent the development of bed sores or ulcers. Tr. 158–59. She also has difficulty swallowing and, at night, must have her head lifted to keep her from choking on her own saliva. Tr. 159. Ms. Mayer's condition is certainly not improving. Indeed, as her daughter Sandra Rosalsky testified, "[s]he has gotten older and more ill and [has] more need of services now than she has ever had before." Tr. 161. Nonetheless, on June 8, 1995, Ms. Mayer received a notice of reduction. The notice explained only that a reduction was appropriate because, "[a]fter carefully reviewing your file it was determined that you no longer require uninterrupted care." Notice of Decision to Change Home Care Services, dated June 8, 1995, annexed as Ex. B–6 to Salzman Aff.

some Medicaid recipients are able to successfully challenge reductions at fair hearings, such hearings are not enough to assure Plaintiffs due process:

> The administrative appeal process is not a substitute for proper prior procedures at the agency level. Whatever its value in individual cases, the administrative appeal process may not regularly be used as a vehicle to conduct a requisite inquiry which the agency continually fails to institute.

*Allen v. Blum*, 85 A.D.2d 228, 448 N.Y.S.2d 163, 169 (1st Dep't 1982), *aff'd*, 58 N.Y.2d 954, 460 N.Y.S.2d 520, 447 N.E.2d 68 (1983). The fair hearing process is a particularly poor remedial device here. As noted, the vast majority of those who receive notices of reduction do not even request a fair hearing. The fact that home care recipients are in such poor health undoubtedly contributes to this phenomenon. In addition, it has been demonstrated that recipients who file timely requests for such hearings have not always received aid-continuing. *See* Sambroff Aff. ¶ 5; *Morel*, 1995 WL 5902, at *11. Moreover, as the experience of one intervenor in this action indicates, even winning a fair hearing does not end the threat of arbitrary reduction; a subsequent notice of reduction may arrive at any moment after the hearing. *See* Perez Aff. ¶¶ 8–9.

### C. *Scope of Injunction*

▬▬▬ Plaintiffs have demonstrated irreparable harm and a likelihood of success on their due process claim,[11] and are thus entitled to injunctive relief. As noted, Plaintiffs desire a preliminary injunction that: (1) prohibits the City Defendant from reducing or terminating home care services without a change in the recipient's condition or circumstances; and (2) requires Defendants to automatically schedule a fair hearing—with aid-continuing—for any recipient whose level of care is reduced. The scope of the relief requested by Plaintiffs is far too broad for two reasons. First, § 366–a(5) does not establish that home care services may only be reduced upon a change in a recipient's condition or circumstances, and I decline to place such a restriction on Defendants. Second, Defendants have demonstrated that it would place a severe burden on them to require fair hearings to be scheduled each time they send out a notice of reduction. *See* Tr. 135–37.

Still, some restriction must be placed on the City Defendant's arbitrary issuance of notices of reduction. Accordingly, I find that prior to issuing any such notice, the City Defendant must first identify some development that justifies altering a recipient's level of services. Specifically, Defendants are enjoined from reducing a recipient's home care services unless they state in the notice that a reduction is justified because of: (1) a change in the recipient's medical, mental, economic or social circumstances; (2) a mistake that occurred in the previous authorization of services; (3) a recipient's refusal to cooperate with the required reassessment; (4) a technological development rendering certain services unnecessary or less time consuming, or (5) a finding that the recipient can be more appropriately and cost effectively served through other Medicaid programs.

Some injunctive relief is also necessary to make it easier for recipients to avail themselves of the fair hearing process, and to insure that aid-continuing is not unjustly denied. Defendants are therefore ordered to: (1) establish an additional telephone line that will be used solely for processing requests for fair hearings; and (2) automatically schedule a fair hearing (with aid-continuing) for any recipient whose notice of reduction is

---

**11.** Plaintiffs may also succeed on their claim that Defendants have violated the comparability provision of the federal Medicaid statute. *See* 42 U.S.C. § 1396a(a)(10)(B). The comparability provision "creates an equality principle by which all categorically needy individuals must receive medical assistance which is no less than that provided to any other categorically or medically needy individual." *Sobky v. Smoley*, 855 F.Supp. 1123, 1139 (E.D.Cal.1994). Contrary to Defendants' arguments, this provision contains precisely the type of unambiguous, mandatory language upon which a § 1983 claim may be based. *See Greenstein by Horowitz v. Bane*, 833 F.Supp. 1054, 1067 (S.D.N.Y.1993); *Sobky*, 855 F.Supp. at 1139. Moreover, the City Defendant's arbitrary issuance of notices of reduction likely violates the provision's command that services made available to one recipient shall not be "less in amount, duration, or scope than the medical assistance made available" to other recipients. *See Greenstein*, 833 F.Supp. at 1073.

mailed less than 10 days prior to its effective date.[12]

## V. *Conclusion*

For the foregoing reasons, Plaintiffs' motions for class certification and intervention are granted, and Plaintiffs' motion for a preliminary injunction is granted in part and denied in part.

SO ORDERED.

12. This order will not apply retroactively.