**J.G., by and through her parent and next friend, F.B., et al., Plaintiffs,**

v.

**Richard MILLS, et al., Defendants.**

**No. 04–CV–5415 (ARR)(SMG).**

United States District Court, E.D. New York.

Signed Jan. 21, 2011.

Filed Jan. 24, 2011.

Cynthia M. Godsoe, David F. Owens, Matthew Lenaghan, Nancy Rosenbloom, New York, NY, for Plaintiffs.

Abigail Lynne Goldenberg, Janice L. Birnbaum, New York, NY, for Defendants.

*AMENDED ORDER*

ROSS, District Judge.

The court has received the Report and Recommendation on the instant case dated December 28, 2010 from the Honorable Steven M. Gold, United States Magistrate Judge. No objections have been filed. Accordingly, the court has reviewed the Report and Recommendation for clear error on the face of the record. *See* Advisory Comm. Notes to Fed.R.Civ.P. 77(b); *accord Edwards v. Town of Huntington,* No. 05 Civ. 339(NGG)(AKT), 2007 WL 2027913, at *2, 2007 U.S. Dist. LEXIS 50074, at *6 (E.D.N.Y. July 11, 2007); *McKoy v. Henderson,* No. 05 Civ. 1535(DAB), 2007 WL 678727, at *1, 2007 U.S. Dist. LEXIS 15673, at *1 (S.D.N.Y. March 5, 2007). Having reviewed the record, I find no clear error.

Pursuant 28 U.S.C. § 636(b)(1), I hereby adopt Judge Gold's recommendation that plaintiffs' motions for intervention and class certification be granted. At defen-

dants' request and with plaintiffs' consent, I will hold plaintiffs' motions for preliminary approval of settlement and for notice and hearing in abeyance until after February 11, 2011.

SO ORDERED.

### REPORT & RECOMMENDATION

GOLD, S., United States Magistrate Judge.

### INTRODUCTION

Plaintiffs, New York City public school students, bring claims on behalf of themselves and other students similarly situated, alleging that defendants violated their rights under federal and state laws by depriving them of educational services while at or upon returning from court-ordered settings.[1] The parties have agreed to the terms of a proposed Stipulation of Settlement that defines a court-ordered setting as any "juvenile delinquency or 'juvenile offender' placement ordered by the Family, Criminal or Supreme Court, with the New York City Department of Juvenile Justice ("DJJ") ..., the New York State Office of Children and Family Services ["OCFS"], or an agency with whom OCFS contracts." Stipulation, Docket Entry 168–2, ¶ 1(b). Plaintiffs' primary allegation is that students have been denied timely and appropriate re-enrollment to New York City community schools upon their discharge from court-ordered settings. Sec. Am. Compl., Docket Entry 36, ¶ 1.

The parties have been involved in extensive settlement discussions for several years. The Court has had significant involvement in those discussions. Now that the parties have reached agreement upon the terms of a settlement, plaintiffs move

for intervention of seven additional named plaintiffs, class certification, preliminary approval of the settlement, and approval of class notice. Docket Entries 168, 178. Plaintiffs' motion for class certification is largely unopposed with one exception—the issue of standing. With limited exceptions, defendants contend that neither the named plaintiffs nor the proposed intervenors have standing and are therefore not adequate class representatives.

The Honorable Allyne R. Ross has referred plaintiffs' motions to me for a report and recommendation. For the reasons stated below, I respectfully recommend that plaintiffs' motions be granted.

### PROCEDURAL BACKGROUND

As explained in my Report and Recommendation on plaintiffs' motion for a preliminary injunction, .

> When students are charged as juvenile offenders or juvenile delinquents, they may be ... placed into pre-adjudication detention. While ... in detention, students ... receive educational instruction through a New York City Department of Education program called "Passages Academy" ("Passages"). Those students who are ultimately found to be offenders or delinquents and sentenced to some time in further custody are usually placed in facilities operated by the New York State Office of Children and Family Services ("OCFS"), which becomes responsible for their care and education.

Report and Recommendation, Docket Entry 138 at 3. Plaintiffs' Second Amended Complaint essentially asserts three claims on behalf of students attending or released

---

**1.** Plaintiffs have settled their claims against the State defendant, Richard Mills, in his official capacity as Commissioner of the New York State Education Department. Docket

Entries 155, 156. As used in this report, "defendants" refers to the remaining City defendants.

from Passages or OCFS facilities: 1) defendants do not provide adequate educational instruction to students at Passages Academy; 2) defendants fail to re-enroll students in community schools promptly and in appropriate classes after their discharge from court-ordered settings, and fail to award students appropriate credit for course work completed while in court-ordered settings; and 3) defendants fail to provide special education services to students at Passages and upon release from court-ordered settings as required by the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* ("IDEA").

The proposed Stipulation of Settlement provides for various remedies, including the following injunctive relief: 1) a requirement that a student released from a court-ordered setting be given a community school placement within five school days of seeking re-enrollment, 2) a requirement that the placement provide appropriate credit-granting course work and all legally mandated special education services, 3) a procedure for developing a new individualized education program ("IEP") for special education students returning from OCFS custody, 4) a procedure for the transfer of student records between court-ordered settings and the New York City Department of Education ("DOE"), 5) the creation of a Best Practices Guide to assist school personnel in their efforts to obtain records from court-ordered settings, make programming determinations, and award credits for course work completed while in a court-ordered setting, and 6) a procedure for providing special education services at Passages. In addition, the Stipulation provides compensatory relief for students who were not timely re-enrolled upon their discharge from a court-ordered setting. The Stipulation also includes a monitoring provision pursuant to which defendants are to conduct audits of their records designed to measure compliance with the Stipulation's terms.

As stated in the Stipulation of Settlement, the parties propose to certify a class defined as follows:

> Students aged 7–21 without a high school diploma who, during the period from December 14, 2001 through the end of the Stipulation period, are or were residents of the City of New York; and either (a) are or were enrolled at Passages Academy ("Passages"), or (b) seek or sought to re-enroll in New York City public schools after being discharged from the custody of the New York State Office of Children and Family Services (OCFS).

Stipulation ¶ 5. The parties further seek to certify six subclasses defined in the Stipulation as follows:

> "Subclass A" is defined as Class Members who attend or have attended Passages Academy.

> "Subclass B" is defined as Class Members who seek or sought to re-enroll in New York City public schools after being discharged from OCFS custody.

> "Subclass C" is defined as Class Members with disabilities who seek or sought to re-enroll in New York City public schools after being discharged from OCFS custody.

> "Subclass D" is defined as Class Members who seek or sought to return to a New York City community school after being discharged from Passages.

> "Subclass E" is defined as Class Members with disabilities who attend or attended Passages Academy.

> "Subclass F" ... is defined as Class Members who, at any time during the Compensatory Education Subclass Period, sought re-enrollment in [a] Community School upon their discharge from a Court–Ordered Setting, and were not

provided with a school placement within five school days or, if the student so requested, referral to an interview school within five school days.

Stipulation ¶¶ 6–11.

As noted above, the only aspect of plaintiffs' pending motion in dispute concerns standing. The parties' dispute over standing came into focus some time after the terms of the proposed settlement were finalized in April, 2010. At about that time, defendants questioned whether the plaintiffs named in the second amended complaint, filed more than five years earlier in March, 2005, Docket Entry 36, still had live claims and standing to represent the putative plaintiff class. Plaintiffs originally argued that, although the original named plaintiffs might no longer be eligible to attend school because of their age and thus no longer had viable individual claims, they retained standing as class representatives because their claims related back to the time of the filing of the original class certification motion in December, 2004.[2] Defendants challenged the application of the relation-back doctrine to this case.

Plaintiffs then sought to intervene new plaintiffs. Docket Entry 168–3. Defendants opposed intervention on the ground that the claims of one of the proposed intervenors was atypical. Defendants also contended that all but one of the seven original named plaintiffs were not adequate class representatives, and, without the original plaintiffs, most of the subclasses were left unrepresented. In their Reply, plaintiffs maintained that each of the originally named plaintiffs and proposed intervenors were adequate representatives.

As the parties attempted to frame their dispute over standing for resolution by the Court, it came to light that plaintiffs' counsel had lost contact with some of the plaintiffs named in the Second Amended Complaint and that those plaintiffs were therefore apparently unaware of the settlement agreement. Accordingly, in an Order I entered in advance of a scheduled oral argument, I noted the following with respect to the adequacy of the original named plaintiffs:

> Even if the court were to find that the original seven named plaintiffs could serve as class representatives despite the fact that their individual claims are now moot, it would seem axiomatic that a named plaintiff must have at least reviewed the proposed class settlement in order to be deemed an adequate class representative under Rule 23. *See People United for Children, Inc. v. City of New York,* 214 F.R.D. 252, 264 (S.D.N.Y.2003) (noting that, "[i]n examining whether a named plaintiff is suitable to fulfill the fiduciary obligations of a class representative, a court must decide whether the party has adequate knowledge of the case or 'whether the party is simply lending his name to a suit controlled entirely by the class attorney'" and finding that "[c]ourts have denied class certification based on plaintiff's unfamiliarity with the case").

Order, Docket Entry 176.

The oral argument was held on October 8, 2010. At that time, I suggested that the students most likely to be affected by the terms of the settlement—and therefore as a practical matter the students most likely to vigorously represent the interests of the class—were those who were currently attending school at Passages or an OCFS

---

**2.** The original class certification motion filed in 2004 was held in abeyance while the parties discussed settlement.

facility and intended to return to a New York City public school upon their discharge. I proposed that such students might properly serve as class representatives. Intervention by students currently in court-ordered settings, however, raised its own issue: whether individuals who otherwise met the subclass definitions but had not—at least yet—been harmed by defendants' practices had a sufficiently live case or controversy to support a right to sue. Defendants contended during the oral argument that such students would not have standing because they had not suffered any injury and the likelihood that they would suffer injury in the future was speculative. Defendants' position is set forth in greater detail in a letter they submitted on October 22, 2010. Docket Entry 177.

On November 5, 2010, plaintiffs filed an amended motion for intervention, certification of a class and subclasses, and for approval of a notice and scheduling of a fairness hearing. Docket Entry 178. In their amended motion, plaintiffs seek certification of a class and subclasses defined somewhat differently than in the stipulation, as follows (changes from the original class and subclass definitions are indicated in italics):

> Main Class: Students aged 7–21 without a high school diploma who, during the period from December 14, 2001 through the end of the Stipulation period, are, were *or will be* residents of the City of New York; and either (a) are, were, *or will be* enrolled at Passages Academy ("Passages"), or (b) sought *or will seek* to re-enroll in New York City public

schools after being discharged from the custody of the New York State Office of Children and Family Services ( ["]OCFS["] ).

> "Subclass A" is defined as class members who have attended *or will attend* Passages Academy.

> "Subclass B" is defined as class members who sought *or will seek* to re-enroll in New York City public schools after being discharged from OCFS custody.

> "Subclass C" is defined as class members with disabilities who sought *or will seek* to re-enroll in New York City public schools after being discharged from OCFS custody.

> "Subclass D" is defined as class members who sought *or will seek* to return to a New York City community school after being discharged from Passages.

> "Subclass E" is defined as class members with disabilities who attended *or will attend* Passages Academy.[3]

Docket Entry 178 at 3.

In addition, plaintiffs seek intervention of four additional individuals who, at least at the time the motion was filed, were in court-ordered settings and intended to return to DOE schools upon release.[4] Docket Entry 178. Defendants continue to oppose plaintiffs' motion on the grounds that the proposed intervenors lack standing and therefore do not have viable claims and may not serve as class representatives. Docket Entries 181, 182.

---

**3.** Plaintiffs do not propose any change to Subclass F. *Compare* Docket Entry 178 at 3 *with* Stipulation ¶ 11.

**4.** Plaintiffs apparently now concede that the original plaintiffs who cannot be located and who have not reviewed the proposed settlement are not adequate class representatives.

*See* Second Declaration of Nancy Rosenbloom ("Second Rosenbloom Decl."), dated Nov. 5, 2010, ¶ 6, Docket Entry 178 (seeking to certify as representatives only J.S.1 from the original complaint). "First Rosenbloom Decl." refers to the Declaration of Nancy Rosenbloom submitted in support of plaintiffs' motion for intervention, Docket Entry 168.

## DISCUSSION

### A. Requirements of Rule 23

I begin my analysis with the Rule 23 requirements for class certification. Because the parties agree that the Rule 23 prerequisites of numerosity, commonality, and typicality are satisfied, I address them only briefly. I consider defendants' challenge to the standing of the proposed intervenors and named plaintiffs separately below.

During oral argument on plaintiffs' motion, plaintiffs' counsel indicated that hundreds of New York City children return from OCFS custody each year and that thousands of children attend Passages each year. Tr. of Oct. 8, 2010, Docket Entry 180, at 4. *See also* Sec. Am. Compl. ¶ 26 (noting that "approximately 5,200 students are released from court-ordered settings each year," which includes the approximately 4,000 youth served at Passages each year). In addition, according to counsel, approximately 60% of students in court-ordered settings require special education services because of their disabilities. Tr. of Oct. 8, 2010 at 7. Defendants do not dispute these facts. Clearly, then, the proposed class and subclasses are sufficiently numerous to satisfy Rule 23(a)(1). *See, e.g., Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir.1995) (presuming numerosity is met when the putative class has at least forty members).

Rule 23(a)(2) requires a showing that "there are questions of law or fact common to the class." Commonality may be met even though individual circumstances differ, so long as class members complain of " 'injuries derive[d] from a unitary course of conduct.' " *Noble v. 93 Univ. Place Corp.,* 224 F.R.D. 330, 338 (S.D.N.Y.2004) (quoting *Marisol A. v. Giuliani,* 126 F.3d 372, 377 (2d Cir.1997)). "Typicality ... requires that the claims of the class representatives be typical of those of the class, and 'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.' " *Marisol,* 126 F.3d at 376 (internal citations omitted). "The commonality and typicality requirements tend to merge into one another, so that similar considerations animate" the analysis of each. *Id.*

Here, the requirements of commonality and typicality are readily met. Plaintiffs' claims arise from agency-wide policies and practices of the Department of Education. The proposed class is divided into subclasses, and the members of each subclass have been or are at risk of being affected by the same particular agency-wide policies. Subclass B, for example, includes students seeking to be re-enrolled in a New York City public school after being released from OCFS custody, and all members of this subclass are therefore similarly affected by the length of time it takes to secure a placement in a community school and the procedures followed when awarding credit for OCFS course work and determining what a student's placement will be. Similar common questions of law and fact exist with respect to each subclass. Moreover, with the exception of proposed intervenor I.B., discussed below, defendants do not assert that there are unique aspects to the claims of any of the plaintiffs or intervenors that would destroy typicality or commonality.

Rule 23(a)(4) requires plaintiffs to demonstrate that the named plaintiffs, proposed intervenors, and class counsel will fairly and adequately protect the interests of the class. As noted above, I will address the standing of these plaintiffs and proposed intervenors separately below. I note here, though, that the interests of proposed intervenors and J.S.1 are aligned with the proposed class members' interests and, assuming they have standing, they

are as a result adequate class representatives. *See Gortat v. Capala Bros.,* 257 F.R.D. 353, 365 (E.D.N.Y.2009).

As to the adequacy of class counsel, both The Legal Aid Society and Advocates for Children have substantial experience with class action litigation. First Rosenbloom Decl. ¶ 3; Lenaghan Decl., Docket Entry 168–5, ¶ 5. Moreover, Advocates for Children specializes in representing students with respect to their rights to educational services. Lenaghan Decl. ¶ 4. *See also D.S. ex rel. S.S. v. New York City Dep't of Educ.,* 255 F.R.D. 59, 74–75 (E.D.N.Y. 2008) (approving Advocates for Children as co-class counsel). Defendants do not challenge the ability of plaintiffs' counsel to adequately and fairly protect the interests of the class. Accordingly, I recommend that The Legal Aid Society and Advocates for Children be approved as class counsel.

Plaintiffs must also establish that they meet one of the subdivisions of Rule 23(b). *See Marisol,* 126 F.3d at 375–76. The main class and subclasses A through E are properly certified pursuant to Rule 23(b)(2), which provides that a class may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

> This subdivision is 'designed to assist litigants seeking institutional change in the form of injunctive relief.' Rule 23(b)(2) is generally satisfied when the nature of the relief sought by plaintiffs is injunctive and would benefit all class members.

*D.S.,* 255 F.R.D. at 73 (quoting *Nicholson v. Williams,* 205 F.R.D. 92, 99 (E.D.N.Y. 2001)). Subclasses A through E seek injunctive relief that would benefit all members of each subclass. Accordingly, Rule 23(b)(2) is clearly satisfied.

With respect to subclass F, plaintiffs seek certification pursuant to Rule 23(b)(3), and thus must demonstrate that "questions of law or fact common to class members predominate" over questions affecting only individual class members and "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The "Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). "[T]he predominance requirement is met if the plaintiff can establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, ... predominate over those issues that are subject only to individualized proof." *Brown v. Kelly,* 609 F.3d 467, 483 (2d Cir.2010) (internal quotation marks omitted, ellipsis in original). "The predominance criterion is, in effect, a stricter version of the commonality requirement of Rule 23(a)(2)." *Ansoumana v. Gristede's Operating Corp.,* 201 F.R.D. 81, 89 (S.D.N.Y.2001).

The members of subclass F seek compensatory educational services. Although individual class members may have been denied placements upon discharge from court-ordered settings for different periods of time, the injuries for which they seek compensatory services—delays in re-enrollment—are the same, and are alleged to have resulted from the same challenged practices. Moreover, and particularly in light of the expense and burden that would be involved in establishing a right to compensatory services by bringing a series of actions on behalf of individual students, a class action is superior to other methods. *See D.S.,* 255 F.R.D. at 74 (certifying a compensatory education subclass and noting that "[c]lass certification is often the

only available means of providing a non-economic remedy for civil rights violations. None of the subclass members here would be able to individually devote the time, resources, and legal representation necessary to vindicate his or her rights and to secure an appropriate remedy."). Accordingly, subclass F is properly certified pursuant to Rule 23(b)(3).

*B. Adequacy of Named Plaintiffs and Proposed Intervenors*

Plaintiffs propose the following individuals as class representatives: J.S.1, who is named in plaintiffs' second amended complaint, Docket Entry 36; I.B., J.K. and O.E., who are proposed as intervenors in plaintiffs' first intervention motion, Docket Entry 168; and S.W., J.S.2, D.C. and J.P., who are proposed as intervenors in plaintiffs' amended intervention motion, Docket Entry 178.

J.S.1 was born in 1990 and was placed in a court-ordered setting in March of 2004. In May of 2004, he was transferred to an OCFS facility. Once he was released in January of 2005, he attempted to enroll in three different community schools but was turned away. Sec. Am. Compl. ¶¶ 198–202, Docket Entry 36. J.S.1 does not have a high school diploma and seeks to obtain educational or vocational services from the DOE. First Rosenbloom Decl. ¶ 20. Based on these facts, plaintiffs assert that J. S.1 is a member of the class and subclasses A, B and F. Second Rosenbloom Decl. ¶ 15.

I.B. is a fifteen-year-old special education student who attended Passages while his Family Court case was pending. He was placed in OCFS custody in the summer of 2009. I.B. claims that the DOE failed to provide him with an appropriate community school placement when he was first discharged from OCFS custo-

dy. I.B. has since been ordered into OCFS custody again, and intends to seek a community school placement upon his release. First Rosenbloom Decl. ¶¶ 22–26. Based on these facts, plaintiffs contend that I.B. is a member of the class and subclasses A, B, C and E. Second Rosenbloom Decl. ¶ 16.

At the time of plaintiffs' first intervention motion, O.E. and J.K. were special education students attending Passages Academy and intending to return to community schools upon release. First Rosenbloom Decl. ¶¶ 27–34. According to defendants, O.E. and J.K. have since been discharged from Passages and were timely placed in community schools. Defs.' Letter dated Oct. 22, 2010 ("Defs.' Letter"), Docket Entry 177, at 1 n. 1. Plaintiffs contend that O.E. and J.K. are members of the class and subclasses A and E, and may become members of subclasses B and C, if they are sent to an OCFS facility.[5] Second Rosenbloom Decl. ¶¶ 17–18.

S.W. is a special education student in OCFS custody who intends to return to a community school once released. Plaintiffs contend that S.W. is a member of the class and subclasses B and C. Second Rosenbloom Decl. ¶¶ 8, 19.

J.S.2 is a special education student attending Passages Academy. Depending on the course of his case, he may be placed in OCFS custody. Whether he is released from Passages or from OCFS custody, he intends to return to a community school. Plaintiffs contend that J.S.2 is a member of the class and subclasses A and E, and may become a member of subclasses B, C and/or D. Second Rosenbloom Decl. ¶¶ 9, 20.

---

5. It appears that defendants do not oppose J.K.'s and O.E.'s representation of subclass E.

Docket Entry 181 at 2, 9–10.

D.C. is a regular education student attending Passages Academy. Depending on the course of his case, he may be placed in OCFS custody. Whether he is released from Passages or from OCFS custody, he intends to return to a community school. Plaintiffs contend that D.C. is a member of the class and subclass A, and may become a member of subclasses B and/or D. Second Rosenbloom Decl. ¶¶ 10, 21.

J.P. is a regular education student who attended Passages Academy and now attends a school at an agency that provides educational services pursuant to a contract with OCFS. J.P. intends to return to a community school when he is released from custody. Plaintiffs contend that J.P. is a member of the class and subclass A and likely will become a member of subclass B. Second Rosenbloom Decl. ¶¶ 11, 22.

While defendants apparently do not challenge the standing of J.S.1 to represent the class and subclass F or the standing of J.K. and O.E. to represent subclass E, they do assert that the remaining proposed intervenors lack standing because none has suffered an injury of the type claimed in this lawsuit and none face any imminent threat of such an injury. More specifically, defendants contend that the release of students in custody is too remote, and the possibility that they will not be properly enrolled if they seek a community school placement too unlikely, to confer standing. Defendants accordingly argue that none of the intervenors may properly serve as a class representative. Plaintiffs counter that the intervenors face a likelihood of future injury of the very type claimed by the class because each intends to return from a court-ordered setting to a community school and that the risk of injury they confront is sufficient for purposes of standing.

■ A plaintiff alleging that he will be harmed by a defendant in the future meets the requirements of Article III standing only where the likelihood of future injury is "sufficiently real and immediate to show an existing controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 103, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)). *See also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (noting that " 'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury"); *Whitmore v. Arkansas*, 495 U.S. 149, 155–59, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) (discussing various cases where the courts found plaintiffs lacked standing because the threat of injury they faced was too speculative).

■ However, "one does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979). The test for standing, moreover, is not to be applied mechanically. Rather, the Second Circuit has noted that "[t]he difference between a threatened injury and a conjectural one is a matter of degree, and since no precise test exists, each case must be considered on an individual basis." *Alliance of Am. Insurers v. Cuomo*, 854 F.2d 591, 596 (2d Cir.1988), *quoted in Mayer v. Wing*, 922 F.Supp. 902, 907 (S.D.N.Y.1996) (alteration in original). When considering whether a threatened injury is sufficiently imminent to confer standing, courts consider "whether there is no better time" to resolve the issues raised by the parties, and generally find standing requirements satisfied when they "will be in no better position later than ... now." *Alliance of*

*Am. Insurers,* 854 F.2d at 599. Moreover, and of particular significance here, courts evaluate standing more flexibly when the threatened injury confronted by a plaintiff is particularly severe: "Because the evaluation of risk is qualitative, the probability of harm which a plaintiff must demonstrate in order to allege a cognizable injury-in-fact logically varies with the severity of the probable harm." *Baur v. Veneman,* 352 F.3d 625, 637 (2d Cir.2003).

Plaintiff in *Baur,* claiming he was at increased risk of contracting "mad cow" disease, sued to require federal regulators to ban the use of downed livestock as food for human consumption. Plaintiff contended he faced an increased risk of contracting "mad cow" disease if he ate meat made from sick cattle. Plaintiff did not claim that he had in fact consumed any offending meat or been diagnosed with any disease. The Court, relying on precedent "recogniz[ing] that threatened harm in the form of an increased risk of future injury may serve as injury-in-fact for Article III standing purposes," *id.* at 633, held that "exposure to an enhanced risk of disease transmission may qualify as injury-in-fact in consumer food and drug safety suits," *id.* at 628.

Subsequent decisions have applied similar reasoning in other contexts. For example, in *Denney v. Deutsche Bank AG,* 443 F.3d 253 (2d Cir.2006), the Second Circuit considered the standing of class members who conducted transactions based upon allegedly improper and fraudulent tax counseling, and were therefore at risk of being audited and assessed penalties by the Internal Revenue Service. The Court held that this risk was sufficient to confer standing even before any audit was conducted or penalty imposed, and noted that "[a]n injury-in-fact may simply be the fear or anxiety of future harm." *Id.* at 264. A recent Southern District case, *Caudle v. Towers, Perrin, Forster & Cros-*

*by,* 580 F.Supp.2d 273 (S.D.N.Y.2008), involved the theft of a laptop computer from the offices of a business' pension consultant. The computer contained the personal identifying information of thousands of employees. Plaintiff, claiming that the consultant was negligent, sought to institute a class action based upon the risk of identity theft faced by the employees as a result of the laptop having been stolen. Citing *Baur* and *Denney,* the court concluded that the risk of future identity theft and fraud was sufficient to confer standing on the plaintiff and putative class. 580 F.Supp.2d at 279–80.

■ The risks confronted by the proposed intervenors and the class they seek to represent are certainly as imminent as those faced by the named plaintiffs and putative class members in *Baur, Denney* and *Caudle.* Each is (or was at the time his or her motion to intervene was filed) in a court-ordered setting, is certain to be discharged from that setting at some time in the future, and intends to seek a placement in a DOE community school once discharged. Thus, each is at risk of delayed re-enrollment or denial of an appropriate placement, and those with disabilities face the additional possibility that necessary special education services will not be made available. A student denied a timely enrollment, an appropriate placement, or special education services identified in an IEP, plainly suffers a very severe harm. *Cf. Baur,* 352 F.3d at 637. Moreover, as noted above, it is difficult to conceive of anyone who would have a stronger incentive to advocate for the absent class members in this case than a general or special education student attending classes in a court-ordered setting, anticipating his or her discharge, and intending to re-enroll in a DOE community school. For all these reasons, I conclude

that defendants' standing argument should be rejected.

■ Three issues remain. First, defendants point out that at least two of the proposed intervenors—J.K. and O.E.—have been discharged from custody and were timely enrolled in community schools after their motion to intervene was filed.[6] This fact, however, does not moot the claims of these proposed intervenors or render them inadequate to represent the interests of the class. To the contrary, when a controversy involving a named plaintiff becomes moot before the district court can rule on a certification motion, the plaintiff's claim may "relate back" to the filing of the complaint or, in this case, the intervention motion. *Sosna v. Iowa,* 419 U.S. 393, 402 n. 11, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975); *Robidoux v. Celani,* 987 F.2d 931, 938 (2d Cir.1993) (reversing district court ruling that standing was lacking because "the original plaintiff at the time the complaint was filed, and each intervenor at the time of her motion to intervene," was suffering a violation of law). This "relation-back" doctrine applies in particular when the class claims are "inherently transitory," such as where students are seeking services that a defendant may provide before a plaintiff is able to obtain relief through litigation. *D.D. v. New York City Bd. of Educ.,* 2004 WL 633222 (E.D.N.Y. Mar. 30, 2004), *vacated and remanded on other grounds,* 465 F.3d 503 (2d Cir.2006). Moreover, the re-enrollment of the proposed intervenors at issue here occurred *after* defendants were put on notice of their intention to intervene. Defendants cannot "avoid judicial scrutiny of [their] procedures by the sim-

ple expedient" of timely re-enrolling intervenors who seek to be, but have not yet been certified as, class representatives. *White v. Mathews,* 559 F.2d 852, 857 (2d Cir.1977)

■ Second, defendants contend that there is little risk that any student discharged from a court-ordered setting will suffer a delay in re-enrollment in a community school or any of the other injuries claimed in this case. In support of this argument, defendants point to audits conducted as part of the settlement negotiations in this case showing that a very high percentage of students returning from court-ordered settings are re-enrolled in a timely manner. Defs.' Letter at 3–4 and 4 n. 4; Docket Entry 181 at 8 n. 6. However, as plaintiffs point out, this outcome is the result of procedures put in place as a result of this litigation. Pls.' Letter of Nov. 11, 2010, Docket Entry 179, at 2–3; Tr. of Oct. 8, 2010 at 5. Thus, if the class is not certified and the settlement agreement is not implemented, the very procedures that have yielded the positive results defendants rely upon may be abandoned. Accordingly, the audit results do not provide a basis for denying intervention or certification. *See Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.,* 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (noting that a federal court is not deprived of jurisdiction by a defendant's voluntary cessation of challenged conduct unless it is clear that the allegedly wrongful behavior could not reasonably be expected to resume); *Lyons,* 461 U.S. at 101, 103 S.Ct. 1660 (holding that a lawsuit challenging a police department's use of a particular choke-hold was

---

**6.** At the time plaintiffs filed their motions for class certification and intervention in August, 2010, J.K. and O.E. were attending Passages. In their original opposition, defendants did not object to proposed intervenors J.K. and O.E. as representing subclass E, class mem-

bers with disabilities who attend Passages. Docket Entry 171 at 4. As of October 22, 2010, defendants note that J.K. and O.E. have since been discharged from Passages and timely re-enrolled in New York City schools. Defs.' Letter.

not rendered moot by a self-imposed moratorium banning the use of the choke-hold because the ban was temporary); *Olson v. Wing,* 281 F.Supp.2d 476, 484 (E.D.N.Y. 2003) (stating that "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice unless it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur") (internal quotation marks omitted).

Finally, as indicated in the discussion above, each plaintiff is or is likely to be a member of more than one subclass. Thus, although each subclass will be represented if the motions for intervention are granted, it appears that at least some subclasses will not have a separate, unique representative. This circumstance, however, is not a bar to a finding that the proposed intervenors are adequate representatives of the class and each subclass to which they belong.[7] *See McDonough v. Toys R Us, Inc.,* 638 F.Supp.2d 461, 491–92 (E.D.Pa.2009) (permitting plaintiffs to represent more than one subclass); *Chisolm v. TranSouth Fin. Corp.,* 194 F.R.D. 538, 558 (E.D.Va. 2000); *Church v. Consol. Freightways, Inc.,* 1991 WL 284083, at *7 (N.D.Cal. June 14, 1991).

For these reasons, I respectfully recommend that the class and subclass definitions be amended as proposed by plaintiffs to include students who will seek to re-enroll in a New York City public school upon their discharge from a court-ordered setting. *See D.S.,* 255 F.R.D. at 68 (defining the class as students who "have been, will be, or are at risk of being" denied certain educational rights); *D.D.,* 2004 WL

633222, at *7 (certifying a class of "[a]ll present and future New York City preschool children with IEPs who have not or will not timely receive all of the services required by their IEPs"). More specifically, subclasses B, C, and D should be amended to include class members "who seek, sought, or will seek to re-enroll" in a New York City school after discharge from a court-ordered setting and subclasses A and E should be amended to include class members who "attended or will attend Passages Academy." With this amendment, I find that plaintiffs have established the Rule 23 prerequisites for class certification and further recommend that the class and subclasses be certified.

Accordingly, I respectfully recommend that the following class and subclasses be certified and proposed representatives be approved:

> Main Class: Students aged 7–21 without a high school diploma who, during the period from December 14, 2001 through the end of the Stipulation period, are, were or will be residents of the City of New York; and either (a) are, were, or will be enrolled at Passages Academy ("Passages"), or (b) sought or will seek to re-enroll in New York City public schools after being discharged from the custody of the New York State Office of Children and Family Services ("OCFS"). Representatives: J.S.1, J.K., O.E., I.B., S.W., J.S.2, D.C., and J.P.

> "Subclass A" is defined as class members who have attended or will attend Passages Academy. Representatives: D.C. and J.P.

---

**7.** Defendants also contend that the claims of proposed intervenor I.B. are not typical because he sought home instruction rather than enrollment in a community school when he was first discharged from OCFS custody. Even assuming defendants are correct, new facts have since developed that render their argument irrelevant: I.B. was subsequently placed back into a court-ordered setting and states he will seek enrollment in a community school once discharged. Intervenor Complaint, Docket Entry 178–2, ¶¶ 31–32.

"Subclass B" is defined as class members who sought or will seek to re-enroll in New York City public schools after being discharged from OCFS custody. Representative: J.P.[8]

"Subclass C" is defined as class members with disabilities who sought or will seek to re-enroll in New York City public schools after being discharged from OCFS custody. Representatives: I.B. and S.W.

"Subclass D" is defined as class members who sought or will seek to return to a New York City community school after being discharged from Passages. Representative: D.C.

"Subclass E" is defined as class members with disabilities who attended or will attend Passages Academy. Representatives: J.K., O.E., I.B., J.S.2

"Subclass F" is defined as class members who, at any time during the Compensatory Education Subclass Period, sought re-enrollment in a Community School upon their discharge from a Court–Ordered Setting, and were not provided with a school placement within five school days or, if the student so requested, referral to an interview school within five school days. Representative: J.S.1

*C. Approval of the Settlement and Class Notice*

Federal Rule of Civil Procedure 23(e) requires notice to class members and judicial approval of any class settlement. The court may approve a class action settlement only upon a finding that the settlement is both procedurally and substantively fair, reasonable, and adequate. FED. R. CIV. P. 23(e)(2); *see also McReynolds v.*

*Richards–Cantave,* 588 F.3d 790, 804 (2d Cir.2009); *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir.1974) (outlining factors for courts to consider in determining the substantive fairness of proposed settlements).

There is "a presumption of fairness, reasonableness, and adequacy as to the settlement where a class settlement [is] reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *McReynolds,* 588 F.3d at 803 (internal quotation marks omitted). Here, the parties engaged in some early discovery and defendants conducted a pre-settlement audit that apparently satisfied plaintiffs that procedures already put in place were working adequately. In addition, I have spent many hours, on multiple occasions, assisting the parties with their settlement negotiations. I am as a result satisfied that the parties engaged in arm's-length negotiations resulting in a proposed settlement that is procedurally fair and reasonable and not the result of any collusion. *See Becher v. Long Island Lighting Co.,* 64 F.Supp.2d 174, 178 (E.D.N.Y.1999).

A court determines whether a proposed settlement is substantively fair by considering the following *Grinnell* factors:

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of

---

**8.** Although plaintiffs seek to have all students who attended Passages or were in OCFS custody be representatives for subclasses A and B, irrespective of whether they are general education or special education students, I recommend that the representatives of subclasses A and B be limited to general education students so as to ensure that the separate interests of general and special education students are adequately represented.

the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*McReynolds,* 588 F.3d at 804 (citing *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir.1974) (internal citations omitted), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.,* 209 F.3d 43 (2d Cir.2000)). These factors weigh heavily in favor of finding the proposed settlement fair.

First, the parties have already spent six years litigating this case, four of which were devoted to settlement negotiations. This case is complex and would undoubtedly require substantial additional time were it to be litigated to conclusion. Second, as noted above, the parties have engaged in sufficient discovery, including a pre-settlement audit, to fashion appropriate remedies.[9] Third, plaintiffs face significant risks in establishing liability, let alone a right to damages or other relief, if this case were to proceed to trial. *See* Report and Recommendation, Docket Entry 138 (finding that plaintiffs had failed to establish a likelihood of success on the merits). Fifth, in light of the discussion earlier concerning standing, and the transitory nature of some of the claims, there is also at least some risk that the class could not be maintained through trial. Finally, having presided over much of the settlement negotiations during the past four years, I am intimately familiar with the parties' positions and the terms of the proposed

stipulation of settlement and I find that the proposed settlement is reasonable. The settlement offers immediate relief to students that might otherwise be denied timely re-enrollment, appropriate placement or required special education services. As discussed above, the defendants have agreed to re-enroll students discharged from court-ordered settings promptly, to provide mechanisms for the efficient transfer of records between defendants and court-ordered settings, and to institute procedures to address the needs of special education students at and returning from Passages and those returning from OCFS custody. For these reasons, I recommend preliminary approval of the proposed settlement.

Finally, I have reviewed the parties' original proposed notice, Docket Entry 168, and, with minor changes, find that it meets the requirements of Rule 23(e).[10] During the oral argument held on October 8, 2010, I offered some minor modifications to the proposed notice. Tr. of Oct. 8, 2010 at 73–78. In addition, dates need to be filled in on the notice. Assuming these changes are made, I recommend that the notice be held to meet the requirements of Rule 23. Finally, the parties' proposed methods for notice are the best practicable ways of reaching all class members.

## CONCLUSION

For the reasons stated above, and with the class definitions and representatives set forth above, I respectfully recommend

---

9. The court does not have any information about the second factor—the reaction of the class to the settlement—at this time.

10. Defendants intend to mail notice of the proposed settlement to all students who attended Passages during the relevant time period. *See* Order for Notice, Docket Entry 168–2 ¶ 3 at 50. Defendants will also post the notice at its enrollment centers and at Pas-

sages. *Id.* ¶ 4. In addition, plaintiffs will send the notice to various agencies throughout New York, who have also agreed to post the notice, and to the Department of Juvenile Justice with a request to post the notice in its detention facilities. *Id.* ¶¶ 5, 6. Finally, plaintiffs will post the notice on the websites of Legal Aid Society and Advocates for Children. *Id.* ¶ 7.

that plaintiffs' motions for intervention, class certification, preliminary approval of the settlement, and approval of class notice be granted. Any objections to this Report and Recommendation must be filed within fourteen days of this Report and in any event no later than January 14, 2011. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir.1989).

Brooklyn, New York, December 28, 2010.